### SAWICKI *v.* CITY OF HARPER WOODS.

1. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENT—COST OF ENGINEERING, INSPECTION AND FINANCING.

     Generally, a special or local assessment may include engineering, inspection, and financing costs of bond issues for the local improvement, since they are part of the actual cost of the improvement for which the assessment is made.

2. SAME—SPECIAL ASSESSMENT—INCIDENTAL AND PRELIMINARY EXPENSES.

     Incidental and preliminary expenses of a special assessment are assessable thereunder even though the service comprising such expense is performed by city personnel.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3]  48 Am Jur, Special or Local Assessments §§ 49, 50.
[2]   48 Am Jur, Special or Local Assessments § 50.
[4]   48 Am Jur, Special or Local Assessments § 10.
[5]   48 Am Jur, Special or Local Assessments §§ 10, 50.
[6, 7]  48 Am Jur, Special or Local Assessments § 3.
[8]   50 Am Jur, Statutes §§ 60, 475.
[9]   5 Am Jur 2d, Appeal and Error § 1009.

3. SAME—SPECIAL ASSESSMENT—ENGINEERING, INSPECTION, AND AD-
MINISTRATIVE EXPENSES.

> Reasonable costs of engineering, inspection, and administrative
> services relative to street paving involved in special assessment,
> which were performed by city employees before, during, and
> after the installation of the improvement *held,* properly in-
> cluded in costs chargeable to the special assessment and were
> authorized by the city charter and ordinance adopted thereunder
> (City of Harper Woods Charter, 12.1, 12.2; Ordinance § 2–501
> [b]).

4. SAME—POLICE POWER—REVENUE FOR GOVERNMENTAL SERVICES.

> A governmental unit may not use its regulatory power under the
> police power in order to raise revenue for expanded government
> services.

5. SAME—TAXATION—SPECIAL ASSESSMENT.

> Exercise of the taxing power in performance of a governmental
> function, the charter- and ordinance-authorized inclusion of
> engineering, inspection, and administrative costs in special
> assessment for paving was not the exercise of such power for
> a governmental purpose (City of Harper Woods Charter, 12.1,
> 12.2; Ordinance § 2–501[b]).

6. WORDS AND PHRASES—TAXATION.

> A tax has the purpose of raising revenue for the general opera-
> tions of government.

7. SAME—SPECIAL ASSESSMENT.

> A special assessment is an exaction for a specific improvement
> project, the benefits of which inure principally to the residents
> of the assessment district in the enhancement of the value of
> the property by the improvement.

8. STATUTES—RETROACTIVE OPERATION—QUESTIONS REVIEWABLE.

> Whether or not statute operated retroactively to validate inclu-
> sion of certain costs in special assessment is not determined in
> class action to recover refund of such costs, where it is de-
> termined such costs were validly included even though the
> services giving rise to the costs were performed by city em-
> ployees pursuant to authority conferred by charter and ordi-
> nance (City of Harper Woods Charter, 12.1, 12.2; Ordinance
> § 2–501[b]).

9. COSTS—PUBLIC QUESTION—SPECIAL ASSESSMENT—COSTS FOR SERV-
ICES BY CITY EMPLOYEES.

> No costs are allowed in class action to recover refund of engineer-
> ing, inspection, and administrative charges for services per-

formed by city employees for special assessment, a public question being involved.

Appeal from Wayne; Gilmore (Horace W.), J. Submitted Division 1 May 12, 1965, at Detroit. (Docket No. 137.) Decided September 20, 1965. Rehearing denied October 27, 1965. Leave to appeal denied by Supreme Court January 24, 1966. See 377 Mich 698.

Declaration by Edward Sawicki and others in a class similarly situated against the City of Harper Woods, Herbert Tucker, City Manager, and Donald Burney, City Treasurer, for a refund of certain moneys assessed in a special assessment district. Judgment for plaintiffs. Defendants appeal. Reversed and remanded.

*L. Edwin Wenger,* for plaintiffs.

*Platt & Platt (Dickinson, Wright, McKean & Cudlip,* of counsel), for defendants.

J. H. GILLIS, P. J. This is a class action by taxpayers of assessment districts in the city of Harper Woods to recover assessments claimed to be in excess of the cost of the improvement.[1]

Plaintiffs are residents of Harper Woods and own real property there which was subjected to special street paving assessments between 1957 and 1960. The city and its manager and treasurer during that period are defendants.

Defendants included in the estimated cost of the improvement 5% of the contractor's bid price for engineering and 3% for supervision, inspection, and testing services performed by its engineering department, and 2% for administrative services per-

[1] This case was before our Supreme Court three years ago when the Court held that no affirmative provision in the improvement bonds prevented refund of excess collections before the bonds were paid. See *Sawicki v. City of Harper Woods* (1962), 368 Mich 435.

formed by city employees in conjunction with the improvement.

Plaintiffs allege that these expenses were not actually expended over and above the actual cost of improvement and should not have been included. They assert their right to recover the entire 10% under section 12.4 of the city charter which provides:

"The excess by which any special assessment proves larger than the actual cost of the improvement and expenses incident thereto * * * may be placed in the general fund of the city if such excess is five per cent or less of the assessment, but should the assessment prove larger than necessary by more than five per cent the entire excess shall be refunded on a pro rata basis to the owners of the property."

Defendants answer that the engineering, inspection and administrative services are assessable and, when included in the assessment, the surplus does not exceed 5%; hence, there is no liability to refund under section 12.4.

The trial court granted plaintiffs' motion for summary judgment, holding that the costs of the services were included in the cost of general government and, under *Merrelli* v. *St. Clair Shores* (1959), 355 Mich 575, not chargeable as actual costs of the improvement.

The issue on appeal is whether the expenses of engineering, inspection, and administrative services are assessable as actual costs against the taxpayers of the districts benefited, when rendered by city employees in connection with a special paving improvement.

It is clear that incidental and preliminary expenses of public improvements can be included in a special assessment.

"The general rule is that a special or local assessment may include the engineering and inspection costs of the improvement and the cost of issuance of bonds to raise funds to pay for the improvement, they being part of the actual cost of the improvement for which the assessment is made. Such an assessment may also include a sum sufficient to pay the preliminary expenses of the improvement." 48 Am Jur, Special or Local Assessments, § 50, at p 605.

Our Supreme Court has recognized that assessments for public improvements may include incidental costs. In *First National Bank of Paw Paw* v. *Nash* (1925), 232 Mich 380, the Court said (p 383):

"The taxpayers in the assessment district cannot be required to pay any more than the actual cost of the drain. This would, of course, include the necessary bridge work and the expense incident to the proceeding. It may be more or less than the estimated cost thereof. * * * It may include the shortage, owing to the collection of the tax levied on the property in the city of Dowagiac having been enjoined."

*Cuming* v. *City of Grand Rapids* (1881), 46 Mich 150, 159, upheld the expenses of engineering and printing in a street improvement estimate as "legitimate expenses, incidental and necessary to the assessment, and * * * properly included."

In *Beniteau* v. *City of Detroit* (1879), 41 Mich 116, a paving assessment was objected to because it included, *inter alia,* the cost of advertising and supervision. The Supreme Court answered this objection (p 118):

"This is a part of the cost of the improvement; and the statute contemplates that the whole cost, except the sum that is to be apportioned to the city, shall be covered by the assessment upon the lots."

It is likewise clear that under the majority rule such incidental and preliminary expenses are assessable even though performed by city personnel.

In *Roberts* v. *City of Los Angeles* (1936), 7 Cal 2d 477 (61 P2d 323), the court upheld the inclusion of costs for collection of the assessment and supervision of the work. The court said (p 493):

"Whether the service of collecting the assessments or supervision of the system is paid to employees of the city or to others is of no concern to appellant. If said services are reasonably necessary and are rendered for the benefit of the district, the question as to whether the city or the employees who actually perform the work are entitled to the compensation cannot affect the duty of the district to pay for services performed."

The Massachusetts supreme court in *Parsons* v. *City of Worcester* (1919), 234 Mass 108 (125 NE 205), approved including engineering and clerical expenses in an assessment (p 114):

"In our opinion there is no reason in principle for excluding these items merely because the city employed the men to attend to this and other similar work. * * * Where the actual time devoted by these employees to the work in question is determined, the proportion which the time so spent bears to the whole time from which these employees are paid can be easily computed. The weight of authority seems to be in favor of this view."

The formula indicated by the Massachusetts court is also sanctioned in *People, ex rel. Stow,* v. *City of Kingston* (1899), 39 App Div 80 (56 NYS 606).

*Pflueger* v. *Kinsey* (1928), 320 Mo 82 (6 SW2d 604), sustained a 6% charge for engineering services performed by a salaried city engineer under a charter provision which provided for assessment of the "entire cost" of the improvement.

One of the reasons for allowing assessment of costs for services rendered by the city is indicated in *Sellers* v. *City of Jackson* (1954), 221 Miss 150 (72 So 2d 247, 75 So 2d 265), which held that work done by city employees was includable in "actual engineering and inspection costs," as provided for by statute. The court said (p 168):

"Too, if the regular engineer is to make surveys for, prepare plans and specifications of, and supervise and inspect, all special improvements, without benefited property owners being charged with any of the cost, then such owners are reaping a large benefit at the expense of the general taxpayers."

The Oklahoma supreme court upheld a 5% charge for engineering services performed by city engineers, saying:

"If an engineer had not already been in the employ of the city and one had been engaged outside, could anyone successfully say that the court's finding 5% reasonable and just was erroneous? Then why, in the absence of a showing that such amount was unnecessary to reimburse the city for his services in this district, or was unreasonably excessive, can the city not under authority of the ordinance reimburse itself to such an amount? No contention is made here, and we perceive that none can be successfully made, that the engineer's services were not as necessary to the proper making of the improvements as any other labor. It cannot be permitted free unless the city is compelled to furnish it free." *City of Tulsa* v. *Weston* (1924), 102 Okla 222 (229 P 108).

See, also, *Bailey* v. *Henrion* (1921), 108 Kan 282 (194 P 928) and *In re South Shilshole Place* (1910), 61 Wash 246 (112 P 228).

Under charter and ordinance, defendant city has authority to assess the districts for the services performed by its employees.

Section 12.1 of the Harper Woods city charter vests the city council with, "power to determine by resolution that *the whole or any part of the expense* of any public improvement be defrayed by special assessment *upon the property especially benefited* in proportion to the benefits derived or to be derived." (Emphasis added.)

Section 12.2 of the charter empowers the council to prescribe by ordinance the complete special assessment procedure. Section 2–501(b) of the city's code of ordinances, adopted pursuant to section 12.2 of the charter, defines "cost" as follows:

"'Cost' includes the expense of the survey, the preparation of the tax roll, notices, advertising, printing, financing, legal, engineering, construction and condemnation and all other costs incidental to the making of the improvement."

It is not disputed either that defendant city did perform extensive engineering and administrative services on behalf of the improvement project or that these services were necessary. Plaintiffs accepted and acknowledged as true a list of services which defendants submitted as part of their answer.

Included in the engineering services were the preliminary survey; preparation of plans, specifications, and cost estimate; securing all necessary bonds and insurance; setting up special assessment district; staking out drainage, excavation, and construction; and continuous inspection and supervision of the construction. Included in the administrative services were the preparation of legal descriptions of all properties; computation of assessments; preparing assessment rolls and mailing assessment bills; collecting and crediting installment payments; preparing bonds and prospectus, awarding bonds, recording bond payments.

Assessment for the cost of these services is clearly authorized under section 2–501(b) of the ordinance.

Having decided that the expenses of engineering, inspection and administrative services performed by the defendant city are actual costs and assessable and that their assessment is authorized under defendants' charter and ordinance, we consider whether *Merrelli* v. *St. Clair Shores* (1959), 355 Mich 575, precludes their inclusion in the assessment. That case held that a governmental unit cannot use its regulatory power under the police power in order to raise revenue for expanded government services. Under attack in *Merrelli* was a raise in fees for municipal licenses and permits which the Court found not reasonably related to the costs of the administration and enforcement of the regulations.

Based upon his interpretation of *Merrelli,* the lower court held that

"Most of the costs incurred here, both as engineering and administrative costs, are included in the cost of general government, and that as such cannot properly be charged as direct and actual costs of the improvement. * * * The costs generally are those reflected in general governmental activities, and as such may not be properly chargeable."

The lower court erroneously applied *Merrelli* to the facts of this case.

Here Harper Woods, in making the assessment, was exercising its taxing power, rather than its regulatory power as St. Clair Shores did in *Merrelli*. See 14 McQuillin, Municipal Corporations (3d ed 1950), § 38.01, p 11. But even though, in using its taxing power, it was performing a governmental function, it was not taxing for governmental purposes. This is so because a special assessment is not a tax, the purpose of which is to raise revenue

for the general operations of government. An assessment is an exaction for a specific improvement project, the benefits of which inure principally to the residents of the assessment district.

"There is a clear distinction between what are termed general taxes and special assessments. The former are burdens imposed generally upon property owners for governmental purposes without regard to any special benefit which will inure to the taxpayer. The latter are sustained upon the theory that the value of the property in the special assessment district is enhanced by the improvement for which the assessment is made." *Knott* v. *City of Flint* (1961), 363 Mich 483, 499. See, also, the authorities there cited.

To summarize, we hold here that the reasonable costs of engineering, inspection, and administrative services performed by city employees in connection with the city's special street paving assessment are actual costs of the improvement and includable in the special assessments.

In light of this, it is unnecessary to decide the other issue raised by appellant, *i.e.*, whether PA 1964, No 27, CL 1948, § 117.4d (Stat Ann 1965 Cum Supp § 5.2077) is retroactive and validates the inclusion of these costs in the defendants' 1957, 1958, 1959, and 1960 assessments.

The judgment of the lower court is reversed and the cause remanded to the trial court for determination of the costs of the engineering, supervisory, and administrative services performed by defendant city.

No costs, a public question being involved.

McGregor and Watts, JJ., concurred.